IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ORLANDO ORTA,**

        **Plaintiff,**

vs.                                          Civ. No.  05-1071 JH/RLP

**TAKEDA PHARMACEUTICALS**
**AMERICA (a corporation) and**
**MICHAEL CARACCI, individually and as**
**an agent, manager and employee of TAKEDA,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendant Caracci's Rule 12(b)(6) Motion to Dismiss* [Doc No. 2], in which co-defendant Takeda Pharmaceuticals America ("Takeda") joins.  The issue before the Court is whether Plaintiff Orlando ("Orta") has pled sufficient facts in order to adequately state a claim.  After considering the pleadings, the arguments of counsel, and relevant authorities, the Court concludes that the motion should be granted.

## BACKGROUND

On August 17, 2005, Orta filed his original complaint against Takeda Pharmaceuticals North America, Inc. and Michael Caracci ("Caracci") with the state district court sitting in Bernalillo County, New Mexico.  On October 11, 2005, Caracci removed the case to this Court on the basis of federal diversity jurisdiction under 28 U.S.C. § 1332.  On October 18, 2005, Caracci filed his motion to dismiss the original complaint for failure to state a claim, as well as his answer to the complaint. On November 21, 2005, Orta filed both his response to the motion to dismiss and his first

amended complaint (hereafter, "amended complaint").[1] Thus, Orta filed his amended complaint with full knowledge of the pleading defects raised by Caracci in the motion to dismiss. The title of Orta's amended pleading is "First Amended Complaint for Wrongful Termination, Defamation, Intentional Interference With Contract, Negligent Hiring, Negligent Retention and Negligent Supervision [sic] Prima Facie Tort." In the body of the amended complaint, Orta asserts the following: (1) "Count II[2] - Interference with Contract, Employment, Causing Wrongful Termination"; (2) "Count III - Defamation"; (3) "Count IV - Negligent Hiring, Negligent Retention, and Negligent Supervision"; (4) an unnumbered count, written in boldface type, stating "Negligent Investigation Resulting in Wrongful Termination"; and (5) an unnumbered count, written in boldface type, stating "Intentional Infliction of Emotional Distress." Despite the fact that the title of the amended complaint indicates that it contains a claim for prima facie tort, the body of the document contains no such claim. However, the matter is moot because in his response to the motion to dismiss, Orta stipulated to the dismissal of his prima facie tort claim.

## **DISCUSSION**

The purpose of a motion to dismiss is to test the sufficiency of the complaint, and the court must "accept all allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 924 (10th Cir. 1994). However, the court must accepts as true all well-pleaded facts, as distinguished from conclusory allegations. *See Witt v. Roadway Express*, 136 F.3d 1424, 1428 (10th Cir. 1998). That is to say, not

---

[1] Orta neither requested nor obtained leave of court to file the amended complaint as required by Rule 15(a).

[2] Orta's amended complaint does not contain Count I, but commences with Count II.

every fact must be described in specific detail, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102-103 (1957), but conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989). The court should dismiss the complaint "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief." *Conley*, 355 U.S. at 45-46.

## I.     INTERFERENCE WITH CONTRACT

Orta alleges that Defendants are liable for intentional interference with contract. In *Fikes v. Furst*, 2003-NMSC-033, 134 N.M. 602, the New Mexico Supreme Court held that in order to prevail on a claim for tortious interference with existing contract, a plaintiff must prove that the defendant knowingly took action to persuade others to break their contractual obligations to the plaintiff, and that defendants accomplished this with either an improper motive or an improper means. *Id*. at 608.

In this case, Orta's claim for tortious interference with contractual relations fails because Orta alleges no facts to support a claim that he had an employment contract with Takeda with which Defendants interfered. Orta does not allege that he had an express contract, nor does he allege background facts from which the Court could conclude that Orta and Takeda were bound by an express contract. Further, Orta does not attach a copy of any express contract to his Amended Complaint. Based upon the current record, the Court concludes that Orta has failed to allege the existence of an express contract between himself and his employer.

Further, Orta does he allege facts from which the Court could conclude that an implied contract of employment existed between Orta and Takeda. An implied contract may be found (i) in written or oral representation; (ii) in the parties' conduct; or (iii) in a combination of representations and conduct. *See id.*, 135 N.M. at 134-35, 85 P.3d at 258-59 (citing *Newberry v. Allied Stores, Inc.*,

3

108 N.M. 424, 427-28, 773 P.2d 1231, 1234-35 (1989)).  In *Gormley v. Coca-Cola Enterprises*, the Court of Appeals held that, whether an implied contract exists is a question of fact, based on the totality of the circumstances, including the employer's oral, explicit, and definite representation.  *See* 108 N.M. at 134-35, 85 P.3d at 258-259 (citing *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 669, 857 P.2d 776, 780 (1993); *Garrity v. Overland Sheepskin Co.*, 121 N.M. 710, 917 P.2d 1382 (1996)).  The existence of an implied contract involves a determination of whether an employee's expectations regarding the terms of her employment are reasonable.  *See Hartbarger*, 115 N.M. at 672 ("An employer does not have to issue a policy statement limiting its power to discharge, but if the employer chooses to do so and creates a reasonable expectation on the part of the employee, it is bound to fulfill that expectation.").  This, in turn, depends in large measure upon whether promises or offers made by the employer were sufficiently explicit to give rise to the reasonable expectations by the employee.  *Id.*  ("In examining implied employment contract cases, we always have required that the *promise* that is claimed to have altered the presumed at-will term *be sufficiently explicit* to give rise to reasonable expectations of termination for good cause only.") (emphasis in original). Once again, Orta's amended complaint is devoid of even the most basic factual allegations from which the Court could infer that, through its sufficiently specific oral or written representations, Takeda created a contract of employment with Orta.  The conclusory allegation that "Caracci ... interfered with Plaintiff Orlando Orta's employment with Takeda," Amended Complaint at ¶ 5, is simply insufficient to support this claim.  Accordingly, in the absence of any contractual duty owed to Orta, his claim for tortious interference with contract must fail.

4

## II.     WRONGFUL TERMINATION[3]

Orta's claim for wrongful termination appears in Court II, along with his claim for tortious interference with contract. Once again, this claim is unsupported by well-pled facts as required by *Witt*, 136 F.3d at 1428.

In the absence of an express contract providing otherwise, an employee is presumed to be an employee-at-will. *Gormley v. Coca-Cola Enters.*, 135 N.M. 128, 134, 85 P.3d 252, 258 (2003) (citing *Lopez v. Kline*, 124 N.M. 539, 953 P.2d 304 (1997)). However, "New Mexico recognizes two exceptions to the doctrine of at-will employment: breach of implied contract and retaliatory discharge." *Whittington v. State of New Mexico Dept. of Public Safety*, 2004-NMCA-124 at ¶ 17, 136 N.M. 503. Therefore, when an employment contract protects an employee from wrongful discharge, that employee may not avail himself of the tort of retaliatory discharge. *See Silva v. American Fed. of State, Cty., and Mun. Employees*, 2001-NMSC-038 at ¶ 12, 131 N.M. 364. Because his claim for interference with contract depends upon the existence of a contract, the Court assumes that Orta pleads that claim and his claim for retaliatory discharge in the alternative.

The New Mexico law governing the tort of retaliatory discharge, also known as wrongful discharge or retaliatory discharge, is well developed. New Mexico has allowed employees to recover in tort when their discharge contravenes a "clear mandate of public policy." *Vigil v. Arzola*, 102 N.M. 682, 688, 699 P.2d 613, 619 (Ct. App. 1983), *rev'd in part on other grounds by* 101 N.M. 687, 687 P.2d 1038 (1984), *overruled in part on other grounds by Chavez v. Manville Prods. Corp.*, 108 N.M. 643, 777 P.2d 371 (1989). The basic burden on the employee in such a case is to prove that he was discharged because she performed an act that public policy has authorized or would encourage

---

[3]This cause of action is also known as wrongful discharge or retaliatory discharge.

or that she refused to perform an act that public policy would condemn. *Id*. at 689, 699 P.2d at 620. Later New Mexico cases have clarified the elements of the cause of action to require the employee to prove that his actions were not "merely private or proprietary," but rather were undertaken to "further the public good." *Gutierrez v. Sundancer Indian Jewelry, Inc*., 117 N.M. 41, 48, 868 P.2d 1266, 1273 (Ct. App. 1993) (citation omitted). *See also Garrity v. Overland Sheepskin Co. of Taos*, 1996-NMSC-032, ¶¶ 15- 16, 121 N.M. 710. In addition, the employee must prove that the employer was aware of his protected acts and discharged him, at least in part, because of that conduct. *Weidler v. Big J Enters., Inc.*, 1998-NMCA-021, ¶¶ 25, 34-35, 124 N.M. 591; *Lihosit v. I & W, Inc*., 121 N.M. 455, 458, 913 P.2d 262, 265 (Ct. App. 1996).

Orta's complaint contains no allegations to support an inference that Takeda discharged him because he performed an act that public policy has authorized or would encourage in order to further the public good. Orta sets forth only one allegation that might be construed as supporting his claim. In Paragraph 19 of his amended complaint, Orta alleges:

> Takeda and or Defendant Caracci acted outrageously in taking the Caracci bias and prejudice to the next level in not only allowing him to perform a totally inadequate negligent investigation, but also in allowing Defendant Caracci to reprimand Plaintiff for *an incident where Plaintiff actually was protecting the welfare of Takeda and other employees*. Plaintiff was not only reprimanded for his laudatory actions, but the incident actually was the determining factor in the firing of the Plaintiff. Instead of applauding and honoring Plaintiff for *getting up in the middle of the night to go to the rescue of other Takeda employees* (three), who were so intoxicated as to be practically *non compos mentis*, Takeda takes part in firing Plaintiff for his laudatory conduct.

(emphasis added). This allegation is so vague and conclusory that it does not enable the Court to determine the nature of the alleged "rescue" conducted by Orta, whether his actions were "merely

private or proprietary," or whether he acted to "further the public good" as required by *Gutierrez*. Further, the Complaint contains no facts to support a claim that he was fired because he refused to perform an act that public policy would condemn. Accordingly, Orta's amended complaint fails to state a claim for retaliatory discharge, and that claim will be dismissed.

## III.   DEFAMATION

The sufficiency of a complaint alleging defamation under New Mexico law must be judged under Rule 8(a) of the Federal Rules of Civil Procedure instead of under New Mexico pleading standards. *See, e.g., Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986); *Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir. 1986). The Tenth Circuit has observed that "in the context of a defamation claim, Fed. R. Civ. P. 8(a) requires that the complaint provide sufficient notice of the communications complained of to allow [a defendant] to defend itself." *McGeorge v. Continental Airlines, Inc.*, 871 F.2d 952, 955 (10th Cir. 1989).

The United States District Court for the District of Kansas has interpreted *McGeorge* to mean that a plaintiff's complaint must identify with specificity the allegedly defamatory statements, the persons who made the statements, and the persons to whom the statements were made, as well as set forth the time frame during which the statements were made so that the defendant may assess whether the statute of limitations has been satisfied. *Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1287 (D. Kan. 1997). In *Bushnell*, the court found that the plaintiff had failed to satisfy Rule 8(a) because although it had identified defamatory statements, it did not allege when the statements were made, who made the statements, or to whom they were made. *Id*. In reaching its decision, the U.S. District Court for the District of Kansas reasoned that "there is a significant exception to the general rule of liberally construing a complaint in applying rule 12(b)(6): when the complaint attempts to state a

7

'traditionally disfavored' cause of action, such as defamation, courts have construed the complaint by a stricter standard." *Bushnell Corp.*, 973 F. Supp. at 1287 (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990)). *Accord Lewis v. Herrman's Excavating, Inc.*, NO. 00-4036, 2000 WL 33407060, *4 (D. Kan. Nov. 02, 2000).

In addition, at least one judge in the District of New Mexico has applied similar reasoning. In *Schuler v. McGraw Hill*, Civ. No. 96-292 SC/RLP (D.N.M. Oct. 17, 1996) (unpublished slip. op.), the defendant moved to dismiss the plaintiff's defamation claim, which was based upon the publication of a magazine article. In an unpublished slip opinion, Judge Santiago Campos cited *McGeorge* and held that a plaintiff had failed to properly plead her claim for defamation where she had identified when and to whom the alleged defamatory statements were made, but neglected to list the specific statements contained in the article that she alleged were defamatory. *Id.*

In light of the foregoing, the Court holds that in order to satisfy Rule 8(a) and to survive a motion to dismiss, a plaintiff asserting a claim for defamation must identify the specific defamatory statements, who made them, to whom they were made, and when they were made. Here, Orta asserts that defamed him with false allegations that he was drinking at a "strip club," Amended Complaint at ¶ ¶ 2, 8, and that he was fired for that conduct. Id. at ¶ 8. These allegations do not satisfy the standard set forth above. They contain no concrete factual allegations as to who made the defamatory statements, to whom the statements were made, or when they were made. The only information that Orta has provided is the substance of the defamatory statements themselves—that she was drinking at a strip club and then terminated. This is insufficient, and therefore his claim for defamation will be dismissed.

**IV.    NEGLIGENT HIRING, NEGLIGENT RETENTION, AND NEGLIGENT**

**SUPERVISION**

> The torts of negligent hiring and negligent retention of an employee are based on the act or omission of the employer. An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

*F&T Co. v. Woods*, 92 N.M. 697, 699 (1979) (internal citations and quotations omitted). The plaintiff must show that the defendant employer knew or should have known of its employee's dangerous propensities, and that he posed an unreasonable degree of risk to the plaintiff. *Id.* In addition, the plaintiff asserting claims of negligent hiring and retention must prove that the employer's negligent hiring or retention of the dangerous employee was the proximate cause of the harm to the plaintiff, *id.* at 699-700, and that the harm was foreseeable. *Pittard v. Four Seasons Motor Inn, Inc.*, 101 N.M. 723, 730 (Ct. App. 1984). A claim for negligent supervision is essentially the same: "The proper standard for determining whether an employer should be held liable for negligent supervision or retention of an employee [is] ... whether the employer knew or reasonably should have known that some harm might be caused by the acts or omissions of the employee who is entrusted with such position." *Los Ranchitos v. Tierra Grande, Inc.*, 116 N.M. 222, 228, 861 P.2d 263, 269 (Ct. App. 1993).

Again, Orta has failed to allege sufficient facts to support this claim. As discussed elsewhere in this Memorandum Opinion and Order, Orta has failed to properly allege that he suffered a compensable harm at the hands of a Takeda employee. That is to say, Orta has not sufficiently alleged that he suffered an underlying tort committed by someone employed and supervised by Takeda. In addition, Orta pleads no facts from which one could infer that Takeda knew or should

have known of the incompetence or dangerous propensities of any employee. *See Narney v. Daniels*, 115 N.M. 41, 51 (Ct. App. 1992). Further, Orta's complaint is comprised almost entirely of conclusory allegations, as opposed to facts. Therefore, even viewing the amended complaint in the light most favorable to Orta, he has failed to state a claim for negligent hiring, supervision, and retention. The motion to dismiss this claim will be dismissed.

## V.    NEGLIGENT INVESTIGATION

Orta claims that Takeda and Caracci are liable because Caracci failed to conduct a competent investigation into the charges against Orta, and that such negligent investigation led to the termination of his employment. However, it appears that in New Mexico, an employer has no duty to investigate allegations against an at-will employee. While such a duty may arise through an employment contract, it does not exist in the common law. In *Hollars v. Southern Pacific Transportation Company*, 110 N.M. 103, 792 P.2d 1146 (Ct. App.), *cert. quashed*, 110 N.M. 14, 791 P.2d 465 (1990), the plaintiff also alleged that the employer had a duty to properly investigate allegations raised against him. *Id.* at 1150. The New Mexico Court of Appeals remanded that issue had to be resolved under the collective bargaining agreement between the parties, not under tort law, because if the defendants owed the plaintiff such a duty it was by virtue of the contract between them. *See also Kennedy v. Enterprise Leasing Co.-West*, 1998 WL 1674699 *5 (D.N.M. October 30, 1998) (Vazquez, J.) (citing *Hollars* and concluding that employers have no duty to investigate under New Mexico law). Having found that New Mexico imposes no duty to investigate, the Court concludes that Orta's claim for negligent investigation fails as a matter of law and should be dismissed.

**VI.     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

In order to recover under a cause of action for intentional infliction of emotional distress under New Mexico law, the plaintiff must show that the tortfeasor's conduct was extreme and outrageous under the circumstances, that the tortfeasor acted intentionally or recklessly, and that as a result of the conduct the claimant experienced severe emotional distress. *Coates v. Wal-Mart Stores, Inc.*, 127 N.M. 47, 57, 976 P.2d 999, 1009 (1999).

When considering the tort of intentional infliction of emotional distress, the New Mexico Court of Appeals recognized that the judiciary must set the threshold of outrageousness high enough so that the social good from recognizing the tort will not be outweighed by unseemly and invasive litigation on meritless claims. *Hakkila v. Hakkila*, 112 N.M. 172, 178, 812 P.2d 1320, 1326 (Ct. App.) *cert. denied*, 112 N.M. 77, 811 P.2d 575 (1991). New Mexico courts have held that liability arises only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Dominguez v. Stone*, 97 N.M. 211, 214, 638 P.2d 423, 427 (Ct. App. 1981); *Andrews v. Stallings*, 119 N.M. 478, 491, 892 P.2d 611, 624 (Ct. App. 1995). Mere insults do not exceed the bounds of decency. *Andrews*, 119 N.M. at 491. In addition, the emotional distress suffered by the plaintiff must have been reasonable and justified under the circumstances; there is no liability where the plaintiff suffered exaggerated and unreasonable distress, unless it results from a peculiar susceptibility of which the actor had knowledge. *Dominguez*, 97 N.M. at 215. "By 'severe' we intend that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances.'" *Jaynes v. Strong-Thorne Mortuary, Inc.*, 1998-NMSC-004 ¶ 20, 124 N.M. 613, 618 (1997).

In the case currently before the Court, Orta's amended complaint merely alleges that he was falsely accused of drinking at a strip club, that Caracci placed him on a performance improvement plan, that Caracci failed to properly investigate the false accusations against Orta, and that as a result of the improper investigation, Takeda terminated his employment.

In evaluating whether these allegations are sufficient to support a claim under Rule 12(b)(6), it is helpful to review relevant precedent in which courts have evaluated the degree of outrageous conduct required to recover under a theory of intentional infliction of emotional distress. In *Padwa v. Hadley*, 1999-NMCA-067 ¶¶ 9-23, 127 N.M. 416, a husband claimed intentional infliction of emotional distress against his friend, alleging that the friend initiated sexual relationships with three different women to whom he had strong emotional attachments (husband's former wife and mother of his child, husband's then-current wife, and husband's former fiancée), all for the purpose of causing husband harm and humiliation. In *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 432, 773 P.2d 1231, 1239 (1989), plaintiff alleged that his employer discharged him in a loud voice and shouted that he did not trust the plaintiff, who was working on a public sales floor at the time. In *Steiber v. Journal Publishing Co.*, 120 N.M. 270, 273, 901 P.2d 201, 204 (Ct. App. 1995), a reporter alleged that newspaper failed to allow her to work on special projects, as promised, and failed to give her due credit for her work. In each of these cases, the court found that the factual allegations did not describe conduct that was sufficiently extreme and outrageous in order to support a claim for intentional infliction of emotional distress.

In contrast, in *Phifer v. Herbert*, 115 N.M. 135, 848 P.2d 5 (Ct. App. 1993), *overruled on other grounds, Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 123 N.M. 170, 936 P.2d 852 (Ct. App. 1997), the plaintiff alleged that her supervisor made explicit and implied sexual remarks and

made improper overtures toward her which embarrassed, shamed, degraded her, and caused her mental anguish to the extent that she was forced to quit her job. Similarly, in *Coates v. Wal-Mart Stores, Inc., supra*, another sexual harassment case, the New Mexico Supreme Court upheld a jury verdict awarding damages for intentional infliction of emotional distress. Plaintiffs in that case produced evidence that a supervisor physically assaulted and verbally sexually harassed them on several occasions over a one-year period, that the store's management took no action when plaintiffs repeatedly complained about the harassment, and that plaintiffs were forced to quit their jobs as a result. In *Jaynes v. Strong-Thorne Mortuary, Inc.*, 1998-NMSC-004 ¶¶ 19-20, 124 N.M. 613, the court held that siblings who witnessed the burial of their brother were not entitled to recover for intentional infliction of emotional distress against the mortuary, which disturbed their mother's grave, thereby exposing her remains to view. In each of these cases, the court found the alleged conduct to be sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress.

In *Stock v. Grantham*, 1998-NMCA-081, ¶ 35, 125 N.M. 564, 964 P.2d 125, the New Mexico Court of Appeals "recognize[d] that only in extreme circumstances can the act of firing an employee support a claim of intentional infliction of emotional distress." The Court agrees, as termination of employment is a common occurrence that rarely rises to the level of being "beyond all possible bounds of decency" and "utterly intolerable in a civilized community." Based upon an analysis of the foregoing legal authorities, the Court concludes that the events alleged in Orta's amended complaint are not sufficient to state a claim for intentional infliction of emotional distress. Rather, his allegations describe workplace unpleasantness not unlike that in *Newberry* and *Steiber*, but certainly do not shock the conscience like the horrible conduct described in *Phifer* and *Coates*.

Accordingly, Defendants' motion to dismiss this claim will be granted.

**IT IS THEREFORE ORDERED** that *Defendant Caracci's Rule 12(b)(6) Motion to Dismiss* [Doc No. 2] is **GRANTED**, and

(a)    Orta's claims for interference with contract, wrongful termination, defamation, negligent hiring, negligent supervision, negligent retention, intentional infliction of emotional distress,and prima facie tort are **DISMISSED WITHOUT PREJUDICE**;

(b)    Orta's claim for negligent investigation is **DISMISSED WITH PREJUDICE**.

_____
**UNITED STATES DISTRICT JUDGE**